The HANOVER INSURANCE
COMPANY

v.

Clinton R. HAYWARD, Jr.

Supreme Judicial Court of Maine.

Argued May 9, 1983.
Decided Aug. 8, 1983.

Ronald R. Coles (orally), Machias, for plaintiff.

Vafiades, Brountas & Kominsky, Jeffrey L. Hjelm (orally), Lewis V. Vafiades, Bangor, for defendant.

Before McKUSICK, C.J., and GODFREY, NICHOLS, ROBERTS, VIOLETTE and WATHEN, JJ.

NICHOLS, Justice.

The Plaintiff, The Hanover Insurance Company, appeals from a judgment entered after a jury-waived trial in Superior Court (Washington County) denying it punitive damages in its action to recover the insurance it had paid its insured, the Defendant Clinton R. Hayward, Jr. The Defendant cross-appeals, challenging the Superior Court's ruling that for purposes of this subsequent civil action his prior criminal conviction for arson was conclusive proof of all facts necessarily adjudicated in the earlier criminal conviction. We deny both the appeal and the cross-appeal.

After the Defendant's house in Calais was destroyed by fire in October, 1979, the Plaintiff paid the Defendant for the damage to the structure. On November 12, 1981, however, the Defendant was convict-

ed of arson, 17–A M.R.S.A. § 802(1)(B)(1) [1], after a jury trial in Superior Court in connection with the destruction of that house, a charge to which the Defendant pleaded not guilty. The sentence was three years incarceration.

It was after this conviction that the Plaintiff insurer commenced this civil action, seeking recovery both of the proceeds paid to the Defendant and of punitive damages. At trial of this civil case, the Superior Court ruled that the Defendant's conviction of arson was conclusive proof of all facts prerequisite to that criminal conviction. The court accordingly entered judgment for the Plaintiff in an amount equal to the proceeds the insurer had paid the Defendant. The court denied the Plaintiff punitive damages, however, declaring that such damages were not appropriate in light of the Defendant's lack of assets and the deterrent effect served by the Defendant's three-year sentence for arson.

### Punitive Damages

On appeal the Plaintiff contends that the Superior Court erred in justifying the denial of punitive damages by reference to the Defendant's lack of assets and to the deterrent effect of a three-year term of confinement. The Plaintiff asserts that punitive damages should have been awarded it notwithstanding these circumstances. We are not persuaded by the insurer's argument.

◼ The award of punitive damages, when available in Maine, is within the sound discretion of the fact finder after weighing all relevant aggravating and mitigating factors. *Farrell v. Kramer,* 159 Me. 387, 391, 193 A.2d 560, 562 (1963); *Sullivan v. McCafferty,* 117 Me. 1, 9, 102 A. 324, 327 (1917); *Johnson v. Smith,* 64 Me. 553, 554 (1875).[2] Aggravating factors may include whether the defendant's conduct was "intentional, wanton, malicious, reckless, or grossly negligent." *Oliver v. Martin,* 460 A.2d 594 at 595 (Me.1983); *McKinnon v. Tibbetts,* 440 A.2d 1028, 1031 (Me.1982); *See Vicnire v. Ford Motor Credit Co.,* 401 A.2d 148, 155 (Me.1979). Mitigating factors may include a defendant's good faith, a defendant's lack of assets to satisfy an award of punitive damages, or any other factor indicating that an award of punitive damages would not serve a deterrent function beneficial to society. *See* W. Prosser, *Handbook of the Law of Torts,* § 2 at 9, 10 & n. 73, 14 & n. 13 (4th ed. 1971).

◼ Although there is some split of authority on whether a fact finder should consider a defendant's wealth in making an award of punitive damages, in this jurisdiction the fact finder may consider a defendant's wealth. *Braley v. Berkshire Mutual Insurance Co.,* 440 A.2d 359, 363 (Me.1982). The amount of a punitive damage award should bear such a relationship to the actual wealth of the defendant that the award will serve to deter future behavior inimical to the well-being of society. *See Braley,* 440 A.2d at 363; *Webb v. Gilman,* 80 Me. 177, 188, 13 A. 688, 688–89 (1888); *Johnson v. Smith,* 64 Me. at 555.[3]

1. 17–A M.R.S.A. § 802 (1983) provides in pertinent part:
   1. A person is guilty of arson if he starts, causes, or maintains a fire or explosion;
   \* \* \* \* \* \*
   B. On his own property or the property of another
   (1) with the intent to enable any person to collect insurance proceeds for the loss caused by the fire or explosion ....

2. The Defendant has made no generalized challenge to the availability of punitive damages in this action. We therefore have no occasion to address the continuing validity of the judicially created rule allowing punitive damages within the discretion of the fact finder. *See Braley v. Berkshire Mutual Insurance Company,* 440 A.2d 359, 361 n. 4 (Me.1982). *See generally* Comment, *The Vitality of the Doctrine of Punitive Damages in Maine,* 35 Me.L.Rev. 447 (1983) (urging retention of punitive damages for their socially beneficial value).

3. *See also In re: Northern District of California "Dalkon Shield" IUD Products Liability Litigation,* 526 F.Supp. 887, 899 (N.D.Cal.1981); *Campus Sweater and Sportswear Co. v. M.B. Kahn Construction Co.,* 515 F.Supp. 64, 106 (D.S.C.1979); *Zhadan v. Downtown Los Angeles Motor Distributors, Inc.,* 100 Cal.App.3d 821, 161 Cal.Rptr. 225, 235 (1979). *See gener-*

■ There is likewise a split of authority on whether punitive damages may be awarded against a defendant who has been criminally convicted in connection with the same conduct that is the basis of the claim for punitive damages. *Compare Security Aluminum Window Manufacturing Corp. v. Lehman Associates, Inc.,* 108 N.J.Super. 137, 147, 260 A.2d 248, 254 (1970) (punitive damages may be imposed despite contemporaneous criminal punishment) *with Moore v. Waitt,* 157 Ind.App. 1, 8, 298 N.E.2d 456, 460 (1973) (mere possibility of criminal prosecution precludes award of punitive damages). *See generally* Annot., 98 A.L.R.3d 870 (1980) (availability of punitive damages for assault when defendant held criminally liable). The courts that have refused to award punitive damages in these circumstances have done so on the theory that awarding punitive damages would be tantamount to punishing a defendant twice for the same conduct. *See, e.g., Glissman v. Rutt,* 175 Ind.App. 493, 496–97, 372 N.E.2d 1188, 1190 (1978).[4] We find this argument unpersuasive. The better view is that the fact finder may consider whether criminal liability has been imposed as one factor in determining whether an award of punitive damages would serve a meaningful deterrent function. *See Johnson v. Smith,* 64 Me. at 554 (the law allowing punitive damages "has become so well settled in this state, *even in cases where the defendant is also liable to criminal prosecution, . . .* that it is now too late to disturb it . . . .") (emphasis added); *Roshak v. Leathers,* 277 Or. 207, 211, 560 P.2d 275, 277 (1977) ("an action for punitive damages is not affected by previous criminal sanctions"). *See also* W. Prosser, *Handbook of the Law of Torts,* § 2 at 11 & n. 86 (4th ed. 1971) ("defendant may still be prosecuted for the crime after he has been mulcted in the tort action").

■ Viewing both the aggravating and mitigating factors present in this case, we conclude that the Superior Court did not abuse its discretion in denying the Plaintiff punitive damages. It is not for us to say what we would have done as fact finders; although the Defendant's intentional burning of insured property to collect insurance proceeds was an egregious violation of the insurer's rights, the Superior Court acted well within the permissible range of discretion in concluding that in this case an award of punitive damages would serve no further deterrent function.

### The Cross-Appeal

At the beginning of this civil trial, the Superior Court ruled that proof of the Defendant's conviction of arson would be conclusive evidence of all facts necessarily adjudicated in the earlier criminal prosecution. On this cross-appeal the Defendant challenges the validity of this ruling, arguing that his criminal conviction should have been afforded merely *prima facie* weight in this civil action. The Defendant asserts that the Superior Court's ruling deprived him of the opportunity to assert various defenses to the Plaintiff's action to recover insurance proceeds. The Defendant's argument is unavailing.

With the promulgation of Rule 803(22) of the Maine Rules of Evidence, evidence of a final judgment of conviction of a crime punishable by death or imprisonment for one year or more became admissible in a subsequent action to prove any fact necessarily adjudicated in the earlier criminal conviction. *See State v. Whitman,* 429 A.2d 203, 206 (Me.1981). This case presents the first opportunity since the promulgation of Rule 803(22) for us to rule on the weight to be given a final judgment of conviction when admitted in a subsequent civil action.

*ally* Annot., 79 A.L.R.3d 1138 (1977) (collecting cases on admissibility of evidence relating to defendant's financial resources for purposes of mitigating award of punitive damages).

4. *See generally* Comment, *supra* note 2, at 455–57 (discussing cases that have refused to impose punitive damages and possible violation of double jeopardy clause of Fifth Amendment posed by imposition of punitive damages after criminal conviction).

■ The better view is that the prior criminal conviction conclusively establishes all facts essential to the final judgment of conviction. Field & Murray, *Maine Evidence*, § 803.22 at 228 (1976) Restatement (Second) of Judgments § 85 & comment e (1982).[5]

Under this view, a final judgment of conviction in a criminal case is preclusive in favor of a third party in a subsequent civil action against the defendant in that criminal case. *See* Restatement (Second) of Judgments § 85(2)(a) & comment e.[6]

■ The rule applies only to cases where there were guilty pleas or issues actually litigated and finally adjudicated in other criminal proceedings. *See* Restatement (Second) of Judgments § 85, comment b (1982). "[U]nless it is shown that the judgment necessarily involved a determination of the fact sought to be included in the second suit, there will be no bar." *Susi v. Davis,* 133 Me. 354, 357, 177 A. 610, 612 (1935). *See Segal v. American Telephone & Telegraph Co., Inc.,* 606 F.2d 842, 845 n. 2 (9th Cir.1979).

■ Furthermore, the rule assumes that the defendant had both the incentive and the opportunity to fully and fairly litigate the issues in the criminal proceedings. *See S.T. Grand, Inc. v. City of New York,* 32 N.Y.2d 300, 304, 298 N.E.2d 105, 107, 344 N.Y.S.2d 938, 941 (1973). *See generally* Restatement (Second) of Judgments § 29 & comment b (1982). In a small class of cases the defendant may not have had such an incentive or opportunity. In such circumstances, the defendant may show that he lacked the incentive or a full and fair opportunity to litigate the issue in the first action. *See* Restatement (Second) of Judgments § 29 (1982).[7]

■ Turning to the facts of this civil action, we find no evidence in the record suggesting that the Defendant did not have a full and fair opportunity to litigate all essential facts at the time of his criminal prosecution for arson. As a factual predicate to the Defendant's conviction for arson under 17–A M.R.S.A. § 802(1)(B)(1), the jury must have concluded beyond a reasonable doubt that the Defendant burned his house with the intent to collect insurance proceeds for the loss caused by the fire. There is no reason that a defendant, having vigorously asserted a defense and been adjudicated guilty on a beyond-a-reasonable-doubt standard, should be allowed to reliti-

---

**5.** *See generally* Vestal, *Issue Preclusion and Criminal Prosecutions,* 65 Iowa L.Rev. 281 (1980); Vestal, *The Restatement (Second) of Judgments: A Modest Dissent,* 66 Cornell L.Rev. 464, 478–83 (1981); Annot., 18 A.L.R.2d 1287 (1951).

Our opinion is limited to situations in which a non-governmental party in a civil action offers evidence of a prior criminal conviction against a criminal defendant to prove matters underlying the criminal conviction. For a discussion of the general situations in which collateral estoppel may be used offensively see *Hossler v. Barry,* 403 A.2d 762, 768–69 (Me.1979) (approving offensive use on a case-by-case basis).

**6.** As the conviction in this case was obtained after a jury trial upon a plea of not guilty, we need not decide today what effect, if any, should be given to a judgment entered following a plea of *nolo contendere. See* Restatement (Second) of Judgments § 85, comment b. Likewise, we need not decide whether a defendant who entered a guilty plea in a criminal

prosecution would be collaterally estopped from relitigating the factual issues underlying the conviction in a later civil action. *See Haring v. Prosise,* —— U.S. ——, ——, 103 S.Ct. 2368, 2375–76, 76 L.Ed.2d 595 (1983) (criminal defendant who brings subsequent § 1983 action not precluded under Virginia or federal law from litigating issue related to criminal conviction despite prior guilty plea); Restatement (Second) of Judgments § 85, comment b (1982) (guilty plea can have no collateral estoppel effect as to any issue because by definition none has been litigated). *See generally* 1B *Moore's Federal Practice* ¶ 0.418[1], 557–58 (1983).

**7.** The number of cases in which a defendant lacked incentive to vigorously litigate a criminal prosecution should be few as evidence of the prior conviction will be admissible under M.R.Evid. 803(22) only when the underlying crime was punishable by death or imprisonment for one year or more.

gate the issues previously determined.[8] "Principles of finality, certainty, and the proper administration of justice suggest that a decision once rendered should stand ...." *Hossler,* 403 A.2d 762, 769 (Me. 1979). We find no error in the Superior Court's ruling that the Defendant's prior criminal conviction conclusively established the Defendant's burning of the structure with the intent to collect insurance proceeds.

The entry is:

Appeal and cross-appeal denied.

Judgment affirmed.

No costs to either party.

All concurring.

---

8. This case is distinguishable from our recent decision in *Patrons-Oxford Mutual Insurance Co. v. Dodge,* 426 A.2d 888 (Me.1981), because in this case there is a complete identity between an issue adjudicated at the prior criminal proceeding—the Defendant's intentional burning of his house to collect insurance thereon—and an issue sought to be established in a subsequent civil trial. In *Patrons-Oxford,* there was a difference between the issue adjudicated in the earlier criminal trial and the issue sought to be proved in the later civil action. In the criminal trial, the Defendant had been convicted of aggravated assault in violation of 17–A M.R.S.A. § 208(1)(B) (Supp.1977). Under that statute the jury could have found the defendant guilty if he "recklessly" caused bodily injury. 426 A.2d at 890. In the subsequent civil action, an insurance company sought a declaratory judgment that the defendant's conduct was not covered by its insurance policy. The policy's bodily injury exclusion only excluded conduct that was intended or expected. *Id.* It did not exclude injury caused recklessly. *Id.* at 892. Because the issue the insurance company sought to establish in the civil action differed from the issue actually adjudicated in the earlier criminal prosecution, we declined in that case to allow the insurance company to use collateral estoppel offensively against the defendant. *Id.*